UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY FRANCES ANDERSON, | No. 2:15-cv-1954 AC |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[2]

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.  See https://www.ssa.gov/agency/commissioner.html (last visited by the court on March 1, 2017).  She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of (continued…)

For the reasons that follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for the immediate calculation and payment of benefits to plaintiff. Although specifically instructed by the Appeals Council to consider plaintiff's claim of impairment by migraine headaches, the Administrative Law Judge ("ALJ") disregarded plaintiff's uncontested diagnosis of migraine headaches, disregarded her uncontested testimony regarding the limiting effects of that impairment, and failed to include the limitations in his residual functional capacity ("RFC").[3]

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and for supplemental security income on November 23, 2009. Administrative Record ("AR") 108 (original ALJ decision).[4] The disability onset date for both applications was alleged to be January 31, 2004. AR 108. The applications were disapproved initially and on reconsideration. AR 108. On July 19, 2011, ALJ Mark C. Ramsey presided over the first hearing (by video) on plaintiff's challenge to the disapprovals. AR 76-100 (transcript). Plaintiff was present and testified at the hearing. AR 76-100. She was represented by Donald Bartholomew, Esq., at the hearing. AR 76.

On August 19, 2011, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 108-17 (decision), 118-22 (exhibit list).

On December 21, 2012, the Appeals Council ("AC") remanded the case to the ALJ.

---

Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

[3] In addition, the ALJ again failed to apply the Special Psychiatric Review Technique on this remand, even though he was specifically directed to do so by the Appeals Council. However, the Appeals Council declined to review the decision on remand, and plaintiff does not challenge the ALJ's decision on this basis. Therefore this court will not address the issue. While, as discussed below, the court finds no other errors in the ALJ's decision, the error regarding plaintiff's migraines is, standing alone, sufficient to warrant a remand for the payment of benefits.

[4] The AR is electronically filed at ECF Nos. 13-1 to 13-11 (AR 1 to AR 696). The paper version is lodged with the Clerk of the Court. ECF No. 13.

AR 124-25. The Appeals Council instructed the ALJ to, on remand, "[g]ive further consideration to whether the claimant's headaches constitute a severe impairment," "[g]ive further consideration to the claimant's maximum residual functional capacity," and "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." AR 125. The AC also instructed the ALJ to "[f]urther evaluate the claimant's mental impairment(s) in accordance with the special technique described in 20 CFR 404.1520a and 416.920a …." AR 125.[5]

On November 6, 2013, ALJ Ramsey presided over the second hearing on plaintiff's challenge to the disapprovals. AR 76-100 (transcript). Plaintiff was present and testified at the hearing. Id. She was represented at the hearing by Donald Bartholomew, Esq. Id. Dr. Bonnie Drumwright, a Vocational Expert ("VE"), was also present and testified at the hearing. Id.

On January 6, 2014, the ALJ again issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 22-32 (decision), 33-38 (exhibit list). On March 3, 2015, the AC denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 5-7.

Plaintiff filed this action on September 16, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 9, 14. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 20 (Commissioner's summary judgment motion), 21 (plaintiff's reply).

## II.   FACTUAL BACKGROUND

Plaintiff was born on November 6, 1963, and accordingly was 40 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 31; see 20 C.F.R

---

[5] See Keyser v. Comm'r Social Security Admin., 648 F.3d 721, 726 (9th Cir. 2011) ("the Social Security Regulations require the ALJ to complete a PRTF ["Psychiatric Review Technique Form"] and append it to the decision, or to incorporate its mode of analysis into the ALJ's findings and conclusions").

§§ 404.1563(c) (age as a vocational factor), 416.963(c) (same).  Plaintiff has a limited education, and can communicate in English.  AR 31.

### III.   LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Garrison, 759 F.3d at 1009.  "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

The court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Rounds v. Commissioner Social Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting evidence").

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner.  See Brown-Hunter, 806 F.3d at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their

discretion for that of the agency") (internal quotation marks omitted).

The court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination …." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV.   RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

In his decision after the AC remand, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since January 31, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: bilateral carpal tunnel syndrome, depression and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Residual Functional Capacity] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally perform fine manipulations with the bilateral upper extremities and is limited to simple, unskilled work without frequent public or fellow employee contact.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Age] The claimant was born on November 6, 1963 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently

changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. [Education] The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Transferability of job skills] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 31,2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 25-32.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 32.

## VI.   ANALYSIS

Plaintiff alleges that the ALJ erred by finding that plaintiff's migraine headaches were not "severe" at Step 2 of the sequential evaluation, and by failing to include the limitations caused by the migraines into the RFC. ECF No. 17 at 14, 19. She also argues that the ALJ erred by failing to find that she met or equaled the Listing of Impairments ("the Listings"),[6] for depression, PTSD and personality disorder. ECF No. 17 at 19.

A. Step 2 – Migraines

  1. Severity

As noted above, plaintiff has the burden at Step 2 of showing that she has a "severe" impairment. See Yuckert, 482 U.S. at 146 ("[t]he claimant … must bear the burden … of showing … at step two that he has a medically severe impairment or combination of impairments"). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless

---

[6] 20 C.F.R. Pt. 404, Sept. P, App. 1.

7

claims. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Plaintiff met her initial Step 2 burden by presenting medical evidence that she has an underlying medically determinable impairment, namely, migraine headaches. See AR 361 (Assessment: "Common Migraine/not Intrc (346.01)").

Having done so, plaintiff then had the burden of showing that the impairment was "severe." An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Smolen, 80 F.3d at 1290. Plaintiff met this burden by testifying, twice, that the migraines were debilitating:[7]

> Q [by ALJ]: Now, after you have one of these migraines, do you bounce right back after maybe four or five hour or does it continue on?
>
> A: No. No, not at all. When I get a migraine, they, they make me very nauseous and, and they last for, like, like, at least a day or two days. They cause vomiting and everything.
>
> …
>
> Q [by ALJ]: Do you have an estimate as to how many days you need to call in sick per month?
>
> [A]: Well, considering I get migraines, you know, on a weekly basis, I would probably miss two or three, probably two or three days a week, so.

AR 66, 67 (Testimony of November 6, 2013).

> Q [by ALJ]: What do you do to relieve the problems associated with migraine headaches?
>
> A: Well, I stay in the dark. They make me, they make me very nauseated and throw up and –
>
> Q: When you say you stay in the dark, how do you accomplish that?

---

[7] The Commissioner does not argue that plaintiff's testimony is not enough to carry plaintiff's burden at this stage, *after* plaintiff has presented medical evidence of her impairment. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) ("[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence"); Smolen, 80 F.3d at 1290 (the ALJ "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity").

A: Well, I have to lay down in the dark.

AR 95 (Testimony of July 19, 2011).

### 2. Credibility

The ALJ found that plaintiff's statements about the "intensity, persistence and limiting effects" of her symptoms were "not entirely credible." AR 29. "Generally, questions of credibility and resolution of conflicts in the testimony are functions solely for the agency." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (internal quotation marks omitted), cert. denied, 552 U.S. 1141 (2008). However, the ALJ "must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints." Id. (internal quotation marks omitted).

The sole reason the ALJ offered for rejecting plaintiff's testimony about the limiting effects of her migraines is that "recent medical records show that the claimant admitted that her migraine headaches had decreased significantly with Topamax …." AR 30. This statement is grossly misleading, because the cited passage (along with plaintiff's consistent testimony on this point), is that her migraines "decreased" from "daily" to "weekly." However, this improvement had no effect on plaintiff's testimony that she would miss work at least weekly because of the effects of the migraines. The ALJ has given no other basis for challenging plaintiff's credibility regarding her migraine testimony.

### 3. Harmless Error

The Commissioner appears to concede the Step 2 error. See ECF No. 20 at 17 ("Plaintiff correctly points out that the ALJ stated there was no diagnosis for migraines despite Dr. Kurosaka diagnosing her with a common migraine (AR 25, 361)"). The Commissioner argues, however, that the error was harmless because the ALJ properly included plaintiff's migraines "later in the sequential process." Id. It is true that if the ALJ properly addressed the limitations caused by plaintiff's migraines in his RFC finding, the Step 2 error would be harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ did not do so here.

The only other place the ALJ addresses plaintiff's migraines is in the RFC analysis. AR 30. There, the ALJ states that "recent medical records show that the claimant admitted that

1  her migraine headaches had decreased significantly with Topamax (Ex. 27F/35)." AR 30.  The
2  ALJ's finding here is entirely unsupported by substantial evidence.  In fact, the cited "admission"
3  is nothing of the kind.  Throughout these proceedings, plaintiff has consistently testified that her
4  migraines were debilitating, as set forth above.  In addition, she has consistently testified that
5  even with medications, the migraines occurred at least weekly, and that they lasted for one or two
6  days when they occurred.

7  In finding that plaintiff's migraines "decreased significantly" with medication, the ALJ
8  cites her "admission" at "Ex. 27F/35." AR 30.  However, the cited reference was to plaintiff's
9  report that her migraines "decreased significantly with Topamax."  However, plaintiff explained
10 that "[s]he still gets them but not quite as often, *usually about two times per week*." AR 667
11 (emphasis added).  The "decrease," in other words, was from the "daily" migraines plaintiff
12 suffered without the medication.  Moreover, this is precisely what plaintiff already testified to at
13 the hearings, where plaintiff testified to "daily" migraines, which, with medication, were reduced
14 to "weekly":

> Q [ALJ]: Okay. Now, with regard to the migraines, over the last five years, you, you thought you testified that the medication was reducing the frequency.  Do you think that's true?
>
> A: I think it reduces the frequency.  It just doesn't, it doesn't take them away, though.
>
> Q: Was it your testimony that they have gone down from may[b]e multiple times a week to maybe once a week?
>
> A: Yes, and it wasn't multiple – I would have them, like, like, daily.

21 AR 66 (Testimony of November 6, 2013); see also AR 61 ("for example, like, the Topamax helps
22 with the migraines, but, but I still get them, like, *instead of daily I get them weekly*") (emphasis
23 added); AR 95 (Testimony of July 19, 2011) ("Q [ALJ]: Over the last two years, approximately,
24 how often do you get migraine headaches?  A: I get them daily.")

25 Having concluded that plaintiff's migraines had decreased significantly, the ALJ failed to
26 include any limitations caused by plaintiff's migraines in the RFC.  Instead of rendering the
27 Step 2 error harmless, then, the ALJ compounded it in his RFC analysis and finding by
28 disregarding the limiting effects of the migraines entirely.

B. Other Issues

1. Mental Impairments

Plaintiff argues that the ALJ erred by failing to find that her mental impairments met or equaled 12.04 (affective disorders), 12.06 (anxiety related disorders) or 12.08 (personality disorders) of the Listings, and failed to include the associated limitations in the RFC. ECF No. 17 ¶¶ 7.2, 7.4. In order to meet or equal any of these Listings, plaintiff must show that the severity of her impairments is such that it results in at least two "marked" limitations in the "B" categories of the listed impairments , or one "marked" limitation together with "repeated episodes of decompensation, each of extended duration." See Listings 12.04(B), 12.06(B), 12.08(B).

However, the ALJ's decision was supported by substantial, even overwhelming, evidence. Every functional assessment plaintiff cites found that plaintiff either had no limitation because of her mental impairments, or that she was "mildly" to "moderately" impaired. See AR 425 (Sid Cormier, Ph.D., July 13, 2009); AR 398-99 (David C. Richwerger, Ed.D., October 22, 2007); AR 492 (Paul S. Leonard, Ph.D., July 15, 2010). Dr. Cormier also conducted a "Psychiatric Evaluation" of plaintiff on October 9, 2006. AR 386-90. His functional assessment of plaintiff does not use the language of the Listings. His rating of plaintiff ranged from "no impairment" to "very significantly" impaired. AR 389-90. The ALJ rejected Dr. Cormier's 2006 opinion because of its age. AR 28. The rejection is reasonable here, as all subsequent functional assessments, including the latter one from Dr. Cormier, showed significant improvement in plaintiff's functioning.

2. Pain and Physical Impairments

Plaintiff argues that the ALJ's RFC failed to include the limitations set forth in the opinions of Drs. Zaneth (AR 417-19, 620), Hicks (AR 426-27), Monie & Kurosaka (AR 436-54, 563-64), Sagar (AR 527-35, 582-608), Murphy (AR 537-42, 571 78), and Sand (AR 608-13, 686-87). ECF No. 17 ¶ 7.3. However, there are no functional limitations identified by these doctors in the cited record passages. The cited passages relate to doctors' and emergency room visits.

Plaintiff also argues that the ALJ failed to credit plaintiff's testimony about her carpal

1  tunnel syndrome and "offered no reason as to credibility" of plaintiff's statements.  ECF No. 17

2  at 25.  Plaintiff is incorrect.  The ALJ stated that he rejected that testimony because plaintiff only

3  was treated for it in 2002, 2004 and 2006, and that she failed to show up at several appointments.

4  AR 29.  According to the ALJ, "[s]uch evidence suggests that the claimant is not as functionally

5  limited as alleged."  AR 29.  Plaintiff – having failed to acknowledge that the ALJ gave these

6  reasons – does not challenge the reasons given, nor suggest that they are insufficient to discredit

7  plaintiff's testimony.[8]

### C.  Remand for Benefits or for Further Proceedings

As discussed above, the ALJ erred in finding that plaintiff's migraines were not severe, and in failing to include the limitations plaintiff testified to in the RFC.  That error was not harmless, because, as plaintiff's evidence (her testimony and the VE's testimony) showed, if she had two or more unscheduled absences per month, she could not perform the alternate jobs the VE identified.  See AR 71-72.

Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'"  Treichler v. Comm'r of Social Security Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the

---

[8] Defendant, meanwhile, tries to bolster the ALJ's decision by citing to medical evidence she claims shows that plaintiff's testimony should not be credited.  ECF No. 20 at 20-21.  However, the ALJ did not rely on that evidence to discredit plaintiff's testimony regarding her carpal tunnel syndrome.  As noted above, the court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  Garrison, 759 F.3d at 1010.

1  record that the ALJ would be required to find the claimant disabled were such evidence credited.
2  Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert.
3  denied, 531 U.S. 1038 (2000)).

                1.     Outstanding issues

Under the second step in the remand analysis,[9] the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). This step is satisfied here.

First, unlike the situation in Dominguez, there is no internal conflict or ambiguity in plaintiff's testimony, the medical diagnosis of her migraines, and the record of treatments she received for the migraines. Second, there is no conflict to be resolved in the remainder of the administrative record. In fact, neither party had identified anything else in the record that deals with plaintiff's migraines. While the ALJ certainly would have been justified if he had chosen to obtain more information,[10] the court knows of no grounds for giving the ALJ a *third* chance to address plaintiff's migraines. The evidence already in the record shows that plaintiff cannot do the jobs identified by the VE given the limitations imposed by plaintiff's migraines.

                2.     Crediting plaintiff's testimony as true

Under the third step in the remand analysis, this court "must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." Dominguez, 808 F.3d at 407 (internal quotation marks omitted). If plaintiff's testimony were credited as true plaintiff would necessarily be found disabled. Specifically, plaintiff testified that she had migraine attacks at least weekly, and that each of them cause her to miss work. The VE testified that if plaintiff had *two* unscheduled absences *per*

---

[9] The first step is satisfied because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony about the limiting effects of her migraines.

[10] "At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) may ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms." 20 C.F.R. §§ 404.1529(b); 416.929(b).

*month* she would not be able to perform any of the alternative jobs she identified.

### 3. Discretion

Where the above steps are satisfied, this court must exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If, despite satisfying the above steps, the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison, 759 F.3d at 1021). However, the court would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

Here, the court sees nothing in the record to create a doubt that the plaintiff is disabled within the meaning of the Act.

### VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 20), is DENIED;
3. This matter is remanded to the Commissioner for the immediate calculation and award of benefits to plaintiff; and
4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 2, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE